IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-01552-REB-BNB

GAYLON R. DAHN,

Applicant,

v.

R. WILEY, Warden,

Respondent.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** (the "Application"), filed August 8, 2006, by Gaylon R. Dahn (the "petitioner"). On August 21, 2006, the respondent was ordered to show cause why the Application should not be granted. The respondent filed an answer to the show cause order on September 6, 2006. For the following reasons, I respectfully RECOMMEND that the Order to Show Cause be DISCHARGED, and that the Application be DENIED.

## I. FACTUAL BACKGROUND

The material facts in this action are not disputed. The petitioner pled guilty in the United States District Court for the Southern District of West Virginia to two counts of inducing illegal entry into the country. He was sentenced to two concurrent terms of forty-eight months in prison and three years of supervised release. The petitioner's projected release date is February 19, 2009. He currently is housed at a federal prison in Florence, Colorado.

The petitioner is challenging regulations of the United States Bureau of Prisons ("BOP") that prevent him from being placed in a Community Corrections Center ("CCC") prior to the last ten percent of his sentence. See 28 C.F.R. §§ 570.20, 570.21. As relief he seeks a declaration that the challenged BOP regulations are invalid and an order directing the BOP to consider him in good faith for immediate placement in a CCC.

## II. THE STATUTORY AND REGULATORY FRAMEWORK GOVERNING CCC PLACEMENT

The BOP regulations codified at 28 C.F.R. §§ 570.21 and 570.21 are derived from two statutes. Pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate the location of a federal prisoner's imprisonment. The BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau." 18 U.S.C. § 3621(b). In addition, the BOP at any time may "direct the transfer of a prisoner from one penal or correctional facility to another." Id. There are five factors the BOP must consider in making the initial placement designation and any transfer decisions. Those five factors are the following:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence –
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant

>    to section 994(a)(2) of title 28.

Id.

The second statute that is relevant to the BOP regulations at issue in this action is 18 U.S.C. § 3624(c). Section 3624(c) directs the BOP to prepare prisoners for re-entry into the community near the end of their sentences. In relevant part, this statute provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c).

Until December 2002, the BOP considered inmates for placement in a CCC for up to six months regardless of the length of their sentences. That policy changed on December 13, 2002, when the Office of Legal Counsel ("OLC") for the Department of Justice issued a memorandum concluding that this practice was unlawful. Based on the OLC memorandum, the BOP determined that it did not have general authority under § 3621(b) to place an inmate in a CCC at any time and that § 3624(c) limits placement in a CCC to the lesser of six months or ten percent of the inmate's sentence. In order to comply with the OLC memorandum, the BOP then began limiting placements in a CCC to the lesser of ten percent of an inmate's total sentence or six months.

Federal prisoners challenged the BOP's December 2002 policy change and two circuit courts, as well as a number of district courts, found that the December 2002 policy was contrary to the plain meaning of § 3621(b) because it did not recognize the BOP's discretion to transfer

3

an inmate to a CCC at any time.  See Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).  These courts reasoned that the time constraints in § 3624(c) limited only the BOP's affirmative obligation to place an inmate in a CCC at the end of the inmate's sentence and not the BOP's discretion under § 3621(b) to place an inmate in a CCC for a longer period of time.  See Elwood, 386 F.3d at 846-47; Goldings, 383 F.3d at 28-29.

In response to Elwood and Goldings, the BOP adopted new regulations in February 2005 governing the placement of inmates in CCCs.  See 28 C.F.R. §§ 570.20, 570.21.  These are the regulations the petitioner is challenging here.  The new regulations provide as follows:

> **§ 570.20 What is the purpose of this subpart?**
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement.  The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> **§ 570.21 When will the Bureau designate inmates to community confinement?**
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as

4

> provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20, 570.21.

### III.  ANALYSIS

I note initially that after this action was filed the United States Court of Appeals for the Tenth Circuit determined that the BOP's February 2005 regulations codified at 28 C.F.R. §§ 570.20 and 570.21 are not a valid interpretation of §§ 3621(b) and 3624(c).  See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007).  Therefore, the petitioner's claim challenging those regulations should be dismissed as moot.  The only question remaining in view of the invalidation of the regulations is whether the petitioner is entitled to an order directing the BOP to consider in good faith his immediate placement in a CCC.

The respondent argues that the Application should be denied both because the petitioner failed to exhaust administrative remedies and because the petitioner's claim for good faith consideration of his immediate placement in a CCC is not ripe.  The respondent asserts in support of the ripeness argument that, pursuant to BOP Program Statement 7310.04, an inmate's unit team will not make a CCC referral decision until eleven to thirteen months prior to the inmate's anticipated release date.  The petitioner's anticipated release date is February 19, 2009, which falls within the time frame specified in Program Statement 7310.04.  The application therefore is ripe.

The petitioner concedes, however, that he has not exhausted administrative remedies.  He contends that the exhaustion requirement should be excused because exhaustion of administrative remedies would be futile.  The petitioner asserts in support of this futility

5

argument that the administrative remedy procedure can take 244 days to complete and could result in irreparable harm. The petitioner does not specify the nature of the irreparable harm he could face if required to exhaust administrative remedies.

Exhaustion of administrative remedies is a prerequisite to federal habeas corpus relief pursuant to 28 U.S.C. § 2241. See Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986). The petitioner is correct that the exhaustion requirement may be waived if exhaustion would be futile. See Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993) (per curiam); see also McCarthy v. Madigan, 503 U.S. 140, 146-48 (1992) (noting that exhaustion requirement may be excused if there is an unreasonable or indefinite timeframe for administrative action, if the agency lacks authority to grant the relief requested, or if the agency is shown to be biased or has predetermined the issue before it).

The arguments raised by the petitioner do not convince me that exhaustion of administrative remedies would be futile in the instant action. The petitioner's assertion that exhaustion can take 244 days to complete does not demonstrate that the timeframe for exhaustion is unreasonable. The petitioner's conclusory and unsupported allegation that he could face irreparable injury also is insufficient to demonstrate that exhaustion would be futile. See Mackey v. Ward, 128 F. App'x 676, 677 (10th Cir. 2005) ("[C]onclusory allegations that pursuit of administrative remedies would be futile . . . are insufficient to excuse [a] failure to exhaust."). If the petitioner is entitled to the relief he is seeking in this action, there is no reason to believe that relief cannot be granted in a timely manner through the administrative remedy procedure.

I find that the petitioner has failed to demonstrate that exhaustion of administrative

6

remedies would be futile and should be excused. As a result, I recommend that the Application be denied without prejudice for failure to exhaust administrative remedies.

I respectfully RECOMMEND that the Order to Show Cause issued on August 21, 2006, be DISCHARGED and that the Application be DENIED without prejudice.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources, Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 19, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge